## Dunmore School Directors' Removal.

*School directors—Removal—Jurisdiction of court not affected by resignation after petition filed—School Code of May 18, 1911.*

Where a petition has been filed by resident taxpayers, under section 217 of the School Code of May 18, 1911, P. L. 309, for the removal of school directors for neglect or misconduct in office, the jurisdiction of the court attaches upon the filing of the petition and is not affected by the resignation of the directors before the disposition of the rule; the court will, therefore, dispose of the rule, notwithstanding the fact that their resignations have been accepted and, in a proper case, will remove them from office and fill the vacancies on the board so caused for their unexpired terms.

Petition for removal of school directors. C. P. Lackawanna Co., Nov. T., 1922, No. 191.

*Will Leach* (of *Welles, Leach & Davis*) and *Jos. L. Rafter*, for petitioners.

*Clarence Balentine*, for Richard Golden, respondent, and *David J. Reedy* and *M. J. Murray*, for the other respondents.

MAXEY, J., Oct. 23, 1922.—On Sept. 30, 1922, twenty-nine resident taxpayers of the Dunmore School District of Lackawanna County presented to this court their petition in writing, verified by the oath of three of them, setting forth certain facts of alleged refusal or neglect of duty on the part of the following directors of the said school district, to wit, William Bulger, M. J. Healey, Harry O'Neill, P. J. Kane, Richard Golden. The facts so set forth were, in substance, that said directors neglected to maintain a sinking fund as required by section 519 of the School Code of 1911; that said directors neglected to obtain written reports of all taxes collected by the tax

3 D. & C.

### Dunmore School Directors' Removal.

collectors, as required by section 553 of said School Code; that said directors neglected to provide funds for the maintenance of the schools; that four months' salaries to the school teachers remained unpaid; that said school directors prepared no proper estimates for the expenses of the district for the school years of 1921 and 1922, and the said expenses exceeded the available funds, in violation of section 563 of the School Code; that said school directors neglected to have orders state on the face thereof the particular item of the annual school estimates upon which said orders were drawn, in every order drawn in 1921 and 1922, and drew said orders on the general fund; that said school directors had repairs made to school buildings and school property of said district to an amount exceeding $300 without letting contracts to the lowest responsible bidders and without due public notice asking for competitive bids, as required by the Act of July 10, 1919, P. L. 899, and that said school directors did not award said contracts by affirmative vote of a majority of the members of the board duly recorded, showing how each member voted, as required by section 403 of the School Code; that the procedure followed was that committees reported "progress" at the meeting of the board, and a motion was entered on the minutes "that the bills contracted by the different committees be paid;" that said school directors appointed teachers and numerous appointees, and entered into contracts, without having a vote of the majority of all the members of the school directors, showing how each member voted, as required by section 403 of the School Code.

Pursuant to said petition, the court, on Sept. 30, 1922, granted a rule upon the respondents to show cause why they should not be removed from office as prayed for. The rule was made returnable Oct. 11, 1922, and provided for five days' notice to the respondents.

On Oct. 11, 1922, four of the five respondents, to wit, M. J. Healey, William Bulger, Harry O'Neill and P. J. Kane, made answer to the petition as follows: That on Oct. 5, 1922, M. J. Healey resigned as a member of said board and his place was filled by the appointment of M. J. McGuire; that on Oct. 9, 1922, William Bulger resigned as a member of said board and his place was filled by the appointment of Victor Burschel; that on Oct. 9, 1922, Harry O'Neill resigned as a member of said board and his place was filled by the appointment of George C. Nye; that on Oct. 9, 1922, P. J. Kane resigned as a member of said board and his place was filled by the appointment of George C. Brooks; that none of the respondents are any longer members of said board, all of the same having been filled by appointment by the remaining directors, in pursuance of, and in strict accordance with, the provisions of the Act of May 18, 1911, P. L. 309.

They thereupon prayed that the petition of the resident taxpayers should be dismissed and the rule to show cause why the respondents should not be removed from office be discharged.

As to Richard Golden, on Oct. 20, 1922, counsel for the respondent and for the petitioners agreed that the facts set forth in his answer that day filed were true and correct, and agreed that the proceedings be dismissed and discontinued as to Richard Golden. The court thereupon, in accordance with said agreement, discontinued the proceedings as to Richard Golden.

### Question involved.

The answer of the respondents, Healey, Bulger, O'Neill and Kane, making no denial of the truth of the charges in the resident taxpayers' petition, and the facts of said petition, therefore, being taken as true, the question now before the court is: Can the four respondents oust the jurisdiction of the

court and stay its hand by resigning from office after the institution of the said proceedings and before disposition of the same?

### The law of the case.

15 Corpus Juris, 822: "It is rather well established as a general rule that jurisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction from attaching in the first instance."

17 Ency. of Procedure, 706: "Where the court has acquired jurisdiction, in the absence of a statute, the jurisdiction of the court depends upon the state of things at the time of the action brought, and, after vesting, it cannot ordinarily be ousted by subsequent events or facts arising in the cause, even if they were of such a character as would have prevented jurisdiction from attaching in the first instance."

Quakertown Borough (Pa.), 3 Grant, 203: This was a petition for the incorporation of a borough. Woodward, J.: "The record shows that the petitioners for the borough were a majority of the freeholders residing within the limits of the village of Quakertown. The court was right in thus disregarding the recantation of some of the petitioners, for, after the jurisdiction had attached, they could not oust it by any act of theirs."

Ehrlen's License, 22 Dist. R. 1041: "The jurisdiction of the court attaches to a petition . . . at the time when it is filed, and if the petition is valid at that time, the jurisdiction of the court will not be ousted by the subsequent disqualification of one or more of the signers."

11 Cyc., 690: "Where the jurisdiction of a court is exclusive and has once lawfully attached, it cannot be ousted by subsequent events or facts arising in the case, but the court may proceed to final judgment, unless some constitutional statute operates to divest that particular court of its jurisdiction."

Lofton v. Collins (Georgia), 61 L. R. A. 150; s. c., 43 S. E. Repr. 708. In this case an information was filed in the name of the State against the mayor, aldermen, commissioners and manager of a dispensary, seeking to enjoin the sale of liquors therein on the ground that such sale was illegal and a public nuisance. A rule was granted. The petition was served on all the parties. The hearing was set for Jan. 15th. On Jan. 13th, two days prior to the hearing, the alderman, who resided in Early County, that is, the county in which the petition was filed, and the dispensary commissioner, who resided in the same county, resigned their offices and their resignations were accepted. The defendants, residing in another county, filed a plea to the jurisdiction on the ground that, because of the resignation of the only defendants residing in the county in which the petition was filed, the court had no jurisdiction of the case. The defendants who resided in the county in which the petition was filed, and who had resigned their offices, asked that the proceedings be dismissed as to them and that their names be stricken from the petition as parties defendant. The trial judge refused the injunction on the ground that he had no jurisdiction. The State appealed from the decision of the trial judge. The appellate court, per Simmons, C. J., said: "We think the trial judge was wrong in refusing to entertain the petition or to grant the injunction after the resignation of the Early County defendants, on the ground that he was without jurisdiction. All of the defendants having been served with process before the hearing and before the resignation of the one resident in Early County, such resignation could not deprive the court of jurisdiction. After a court once acquires jurisdiction of the person and subject-matter, the death, removal from the county, or resignation from office, of one of the defendants

3 D. & C.

will not abate the suit, and the court will have power and authority to proceed to final judgment or decree."

In the case at bar the court acquired jurisdiction of the persons and the subject-matter of the suit, and it follows that the resignation from office of four of the defendants will not abate the suit, and thus the court will have power and authority to proceed to final judgment. To hold otherwise would be to defeat the purposes of section 217 of the School Code of Pennsylvania, which provides for the removal of school directors who have neglected or refused to perform the duties imposed upon them by law. It is to be observed that section 217 of the School Code provides that the court shall not only have the power "to remove such board or such of its number as in its opinion is proper," but that the court also has power to appoint for the unexpired terms other qualified persons in their stead. Section 218 provides that any person so removed from the office of school director shall not be eligible again as a school director for the period of five years thereafter. Section 219 provides that the court shall impose the costs of said proceedings upon the petitioners, or upon the school directors, or upon the school district, or may apportion the same among them as it shall deem just and proper.

## Conclusion.

If directors who have been guilty of such gross violations of the School Code as are charged in the case at bar are permitted to escape the penalties prescribed by law for their misdeeds, to wit, disqualification from office for five years, and the imposition of costs upon them, the sections of the School Code above referred to will become a nullity. If directors should, after the institution of proceedings against them, be permitted to resign and to appoint whomsoever they might see fit as their successors, it would be practically impossible for aggrieved taxpayers of any school district to secure redress for wrongs done the district by gross neglect of duty on the part of said directors.

It is clearly against the public policy of the Commonwealth to permit its laws to be flouted in the fashion attempted in the case at bar. The law gives the courts jurisdiction to put an end to flagrant evils in the administration of the affairs of a school district by removal from office, which removal carries with it the above disqualification for five years for holding the same office, of the directors in whose neglect or criminal conduct said evils have their source. This jurisdiction is vested in the courts for the promotion of good order, good government and the welfare of society. It is contrary to sound sense and the interests of public justice to permit offending school directors to escape the consequences of their misdeeds and to perpetuate their own dynasty, if they see fit, by resigning the offices they have disgraced and hastily passing their power over to others of their choosing as soon as they are brought to the bar of justice.

The School Code of Pennsylvania nowhere, either expressly or by implication, gives countenance to the subterfuge resorted to by the four respondents in the case at bar. Nor is said subterfuge given any better legal standing by reason of the fact that, in deference to an outraged and aroused public sentiment, the offending directors selected as their successors men of character and ability. If the respondents believe their procedure in this case will avail them, they have mistaken the power of the court. Its jurisdiction once attached is not so easily ousted. It possesses inherent power to dispose of all questions properly brought before it. This case came within the grasp of the

Dunmore School Directors' Removal.

court on Sept.' 30th last; it still remains there, and the court will now proceed to make full disposition of the same.

*Order.*

Now, to wit, Oct. 23, 1922, William Bulger is removed as a school director of the Dunmore School District of Lackawanna County, and for his unexpired term Victor Burschel is appointed in his stead; M. J. Healey is removed as a school director of the Dunmore School District of Lackawanna County, and for his unexpired term Frank Coughlin is appointed in his stead; Harry O'Neill is removed as a school director of the Dunmore School District of Lackawanna County, and for his unexpired term George C. Nye is appointed in his stead; P. J. Kane is removed as a school director of the Dunmore School District of Lackawanna County, and for his unexpired term George G. Brooks is appointed in his stead. The costs of this proceeding are imposed equally upon the four school directors removed, to wit, William Bulger, M. J. Healey, Harry O'Neill and P. J. Kane.

From William A. Wilcox, Scranton, Pa.